IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

QUENTIN LINK, a minor, by Next Friend and )
Legal Guardian, Iris Link, and by IRIS LINK, )
individually, )
)
    Plaintiffs, )
)
v. )   Case No. _____
)
METROPOLITAN NASHVILLE BOARD )   JURY DEMAND
OF PUBLIC EDUCATION, HARPETH )
VALLEY ELEMENTARY SCHOOL, and )
KIMBER HALLIBURTON, individually and )
in her official capacity as principal of Harpeth )
Valley Elementary School, )
)
    Defendants. )

## COMPLAINT

Plaintiffs Quentin and Iris Link, for their Complaint against Defendants, state as follows:

### PARTIES

1. Plaintiffs Quentin and Iris Link are residents of the State of Tennessee, currently residing in Davidson County, Tennessee.

2. Defendant Metropolitan Nashville Board of Public Education ("Board") is a governmental body located within this district, and may be served with process through William Michael Safley, Director, Metro Nashville Department of Law, 108 Metropolitan Courthouse, Nashville, Tennessee.

3. On information and belief, Defendant Harpeth Valley Elementary School ("HVES") is owned and operated by the Board, and may be served with process at 7840 Learning Lane, Nashville, Tennessee. Alternatively, HVES is not a separate entity but is an arm of the Board.

1

4. Defendant Kimber Halliburton is a citizen and resident of Davidson County, Tennessee, and the principal of HVES. She may be served with process at 7840 Learning Lane, Nashville, Tennessee. At the time of the events giving rise to this Complaint, Defendant Halliburton was the principal of HVES and an employee and/or officer of the Board. Defendant Halliburton was directly involved with the incidents described in this Complaint.

5. As Principal of HVES, Defendant Halliburton had final policymaking authority with respect to decisions and actions within the scope of her responsibilities.

## JURISDICTION AND VENUE

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this action arises under the United States Constitution, 20 U.S.C. § 1400, *et seq.*, 29 U.S.C. § 794, 42 U.S.C. § 1983, 42 U.S.C. § 2000d, *et seq.*, and 42 U.S.C. § 12131, *et seq.*

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants reside in this district and because a substantial part of the events giving rise to this Complaint occurred within this district.

## FACTS

8. Quentin Link is an African American child with ADHD who was unfairly, improperly, and unlawfully expelled by Defendants when he was a third grade student at HVES.

9. Quentin has been diagnosed with ADHD and suffers from difficulties processing auditory and visual cues.

10. HVES administrators and/or staff knew from early in Quentin's kindergarten year that he may struggle with ADHD, and at their suggestion Quentin was placed on medication.

11. Quentin had to stop taking medication for his ADHD because he had a severe adverse physical reaction to it.

2

12. On information and belief, Quentin was singled out by Defendant Halliburton and other staff and/or administrators at HVES because of his ADHD and because of his race.

13. Defendant Halliburton and other HVES administrators have a pattern and practice of failing to accommodate students with ADHD and other related disorders, and of failing to provide the resources required for them to receive an appropriate public education.

14. In addition to failing to provide appropriate accommodations for Quentin in light of his disorders, Defendant Halliburton and/or other HVES administration and staff singled out Quentin and treated him differently and disciplined him more severely than other children with ADHD at HVES.

15. Unlike other students struggling with ADHD at HVES, Quentin was singled out for repeated suspensions and ultimately expulsion. On information and belief, this disparate treatment was based on Quentin's race.

16. HVES has a history of disciplining African American students more harshly than white students.

17. Defendant Halliburton also has a history of disciplining African American students more harshly than white students, which history pre-dates her time as principal of HVES.

18. Since the moment he started kindergarten at HVES, Quentin has been unfairly singled out for disciplinary sanctions. Quentin was suspended and/or received disciplinary write-ups up no less than twenty-four (24) times in kindergarten, and he was suspended multiple times and received several disciplinary write-ups in first grade and second grade as well. None of these suspensions related to incidents of violence against other students. In fact, the vast

3

majority of the disciplinary actions taken against Quentin simply involved conduct that school officials deemed "prejudicial to good order."

19. Almost all of these incidents involved Quentin engaging in distracted behavior attributable to his ADHD (for which he could take no medication) – such as turning the wrong way down the hall or not focusing on his schoolwork – followed by a verbal confrontation by the teacher. These verbal confrontations invariably triggered an oppositional reaction due primarily to Quentin's ADHD and his difficulty processing auditory and visual cues. In response to his reaction, Quentin would be sent to the principal's office where he would face another verbal confrontation and then be suspended or receive some other disciplinary measure.

20. Quentin's parents worked tirelessly to cooperate with school officials in hopes of creating an environment in which Quentin could succeed. For example, Plaintiff Iris Link was required to accompany Quentin on every field trip. Ms. Link also attended numerous meetings, wrote many notes and e-mails, and communicated extensively with teachers and administrators regarding Quentin's behavior, his disabilities, and circumstances in his life that might affect his mood or his ability to concentrate.

21. By and large, school administrators ignored or discounted the effect these circumstances might have on Quentin's behavior. Moreover, despite Ms. Link's pleas to use alternative methods with Quentin, teachers and school officials continued to discipline Quentin in the same ineffective and counter-productive manner for years.

22. In his second grade year, Quentin's treating physician specifically recommended that Quentin be given an IEP, but Defendant Halliburton and other HVES administrators refused to do so.

4

23. Instead, Defendant Halliburton and other HVES administrators decided on their own, contrary to the recommendations of Quentin's physician, to split Quentin's school day between two classrooms for his third-grade year.

24. Defendant Halliburton's experiment predictably failed and Quentin continued to suffer through the same inappropriate and ineffective disciplinary routine he had experienced the previous three years.

25. Defendants finally relented and, at his mother's specific request, Quentin was given an IEP on or about November 2, 2010.

26. Even when Quentin was finally given an IEP, Defendant Halliburton and/or other HVES administrators refused to allow some of the accommodations specifically requested by Ms. Link, such as one-on-one time or a smaller classroom setting.

27. Nonetheless, despite its shortcomings, the IEP appeared to be working. After the IEP was put into place Quentin went about four (4) months without a disciplinary write up – the longest consecutive period of time Quentin had gone without such a write up throughout his entire time at HVES.

28. Quentin would have continued his progress if HVES officials had continued to follow the IEP. However, they did not.

29. On or about February 3, 2011, Quentin was taken to the principal's office instead of being taken to a resource teacher, as required by the IEP. Predictably, Quentin had an oppositional reaction to being taken to the principal's office, which had become the place of punishment over the previous three and a half years.

30. When Ms. Link asked why the IEP had not been followed, she was not given any satisfactory explanation and was essentially dismissed by Defendant Halliburton.

31. After Defendant Halliburton refused to explain the school's failure to follow the IEP, Ms. Link filed a complaint with the Board against Defendant Halliburton for the school's failure to follow the IEP and the principal's attitude toward her.

32. From that day forward, Defendant Halliburton and other HVES officials stopped investing in the IEP process and resumed their previous pattern of verbally confronting Quentin and sending him to Defendant Halliburton's office to be punished.

33. In the face of an escalating situation involving a disabled child, Defendant Halliburton and other HVES officials steadfastly refused to make any alterations to the IEP, with one noteworthy exception: Defendant Halliburton requested the IEP be altered so Quentin would have a one-on-one setting when taking the standardized TCAP test, the results of which would reflect directly on Defendant Halliburton's performance. But she did not extend this accommodation to Quentin's classroom setting or make any other modifications to his learning environment.

34. Quentin was repeatedly suspended after the February 3 incident, until Defendant Halliburton finally expelled him from HVES for an entire year on May 11, 2011.

35. On information and belief, Defendant Halliburton repeatedly suspended Quentin, and ultimately expelled him, in retaliation for his mother lodging a complaint with the Board.

36. Quentin's expulsion was particularly vindictive in that it came just two (2) weeks before the end of the school year, especially since Defendant Halliburton and other HVES administrators knew Quentin had already been accepted to Currey Ingram Academy and would not be returning to HVES the following school year. Nonetheless, Defendant Halliburton expelled Quentin for an entire year.

37. Defendant Halliburton and other HVES administrators knew that their expulsion of Quentin would place his placement at Currey Ingram Academy in jeopardy.

38. When Ms. Link, informed administrators at Currey Ingram Academy about the expulsion, she was told they would need to review the situation again before allowing Quentin to enroll at Currey Ingram Academy. After their review, the administration at Currey Ingram Academy determined Quentin's expulsion was simply the result of his ADHD and that he would still be a good fit at their school.

39. Since enrolling at Currey Ingram Academy in the fall of 2011, Quentin has succeeded remarkably at school. Contrary to his four (4) years at HVES, during which he was repeatedly punished for having a disability, Quentin received the appropriate accommodations for a child with his disability. As a result, Quentin learned to love going to school, earned high marks, and became a voracious reader.

40. Quentin Link is the only child to have been expelled from HVES since at least 2007.

41. The reasons cited by Defendant Halliburton for Quentin's expulsion from HVES were: (1) conduct prejudicial to good order, in violation of Code of Conduct Rule 74-10; (2) "repeated violations," in violation of Code of Conduct Rule 8-10; and (3) "bullying," in violation of Code of Conduct Rule 29-10.

42. Plaintiffs requested a Level One Appeal of the expulsion.

43. On or about May 24, 2011, the committee for the Level One Appeal found there was nothing in Quentin's disciplinary record to support Defendant Halliburton's allegation that he had engaged in "bullying," and his expulsion was reversed with respect to that ground.

44. The fact that Defendant Halliburton included the allegation of bullying at all, with nothing in the record and no behavior to support the allegation, further illustrates the vindictive nature of the expulsion.

45. Despite reversing the determination that Quentin engaged in "bullying," the committee upheld his expulsion, although they limited it to just six (6) months instead of a full year.

46. Plaintiffs requested a Level Two Appeal of the decision at the Level One Appeal. On or about June 7, 2011, the decision of the Level One Appeal was upheld.

47. The Level Two Appeal decision suggested that Quentin would do better at a school other than HVES when he returned to Metro Public Schools.

48. Plaintiffs requested a Level Three Appeal of the decision to the Board. On or about July 13, 2011, the Board sent notice that the request for a Level Three Appeal was denied.

49. Quentin's expulsion was upheld solely because he had a disability; or, more specifically, because of the manner in which HVES officials punished him for having a disability. Quentin did not engage in bullying, gang activity, violence, fighting, or the use of alcohol or tobacco. He was repeatedly suspended for behaving the way any child with ADHD might behave (particularly one who cannot be medicated), and then for having his behavior escalate, predictably, because of the way HVES officials reacted to his behavior.

50. The Level One Appeal decision recommended that Quentin be placed in an "MIS" setting if he returned to school following the expulsion.

51. Neither Defendant Halliburton nor any other administrator at HVES had ever mentioned to Plaintiffs the possibility of an MIS setting prior to his expulsion, much less suggested that Quentin might benefit from such a placement.

8

52. This failure to communicate about the existence of an MIS placement is consistent with Defendants' pattern of failing to consider, or even communicate about, alternative options to help Quentin in light of his disability. HVES officials consistently refused to allocate resources, or even admit there was a need to allocate resources, to help Quentin succeed at HVES.

53. On information and belief, this pattern of refusing to allocate appropriate resources to assist students struggling with ADHD type disorders was not limited to Quentin but was persistent throughout HVES.

54. Unlike other students struggling with ADHD at HVES, however, Quentin was singled out for disciplinary write-ups, repeated suspensions, and ultimately expulsion. On information and belief, this disparate treatment was based on Quentin's race.

55. The actions of the Board, HVES, and Defendant Halliburton violated Plaintiffs' rights to equal protection under the United States and Tennessee Constitutions, their civil rights, and their rights to a free and appropriate public education.

## COUNT I
## VIOLATIONS OF 20 U.S.C. § 1400, *et seq.* ("IDEA")

56. Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 55 of this Complaint as if fully set forth herein.

57. Plaintiff Quentin Link has ADHD and difficulty processing auditory and visual cues, which disabilities adversely affected his educational performance. Accordingly, Quentin is a child with a disability within the meaning of 20 U.S.C. § 1401(3)(A).

58. From at least his kindergarten year at HVES, Defendants knew about Quentin's disabilities, and that he struggled academically, behaviorally, and socially.

59. Ms. Link repeatedly requested that Defendants provide an evaluation for Quentin to determine if some form of additional educational assistance was warranted in light of his disabilities.

60. Defendants failed to initiate a full evaluation for Quentin until the middle of his second grade year, at the earliest. Meanwhile, Quentin was repeatedly suspended and written up for engaging in "conduct prejudicial to good order."

61. After his evaluation, Defendants refused to develop an IEP for Quentin, despite the recommendation of his treating physician.

62. When Quentin was finally given an IEP (at his mother's specific request), Defendants ignored the requests of his parents and his treating physician for specific accommodations, such as a small classroom setting or a one-one-one situation.

63. Defendant Halliburton and other HVES administrators and/or staff failed to consistently follow the procedures set forth in the IEP.

64. When Quentin's progress stalled after approximately four (4) months of steady progress under the IEP, Defendants failed to review and/or revise the IEP to address the changing situation.

65. The only modification made to Quentin's IEP in the midst of the escalating behavior and stalled progress was to provide accommodations for a standardized test whose scores would directly reflect on Defendant Halliburton, HVES, and the Board.

66. Instead of reviewing and/or revising Quentin's IEP with respect to his daily learning environment, Defendants resumed their prior pattern of disciplining and suspending Quentin.

67. Quentin was expelled from HVES on May 11, 2011, as a direct result of Defendants' failure to implement, follow, and review and revise Quentin's IEP.

68. By failing to evaluate and/or re-evaluate Quentin's disabilities, implement and consistently follow an IEP, and review and/or revise the IEP when it became painfully obvious change was needed, Defendants deprived Quentin Link of the free and appropriate public education to which he was entitled in direct violation of the mandates of the IDEA.

69. Quentin was expelled and received multiple disciplinary actions as a direct result of Defendants' failure to provide Quentin with an appropriate education. All of these disciplinary actions remain on his school record.

70. Because Defendants deprived Quentin of the education to which he was entitled, Plaintiffs were compelled to enroll Quentin in a satisfactory private school at great expense.

71. Plaintiffs have suffered emotional injuries and other losses as a result of Defendants' wrongful and illegal conduct.

## COUNT II
## VIOLATIONS OF 29 U.S.C. § 794 ("Section 504")

72. Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 71 of this Complaint as if fully set forth herein.

73. Plaintiff Quentin Link has ADHD and difficulty processing auditory and visual cues, which disabilities substantially limit one or more major life activities. Accordingly, Quentin is an individual with a disability within the meaning of Section 504 of the Rehabilitation Act and applicable regulations.

74. Defendants knew about Quentin's disabilities, and that Quentin could not be medicated for his disabilities.

11

75. Quentin received repeated suspensions and disciplinary write-ups because of the difficulties caused by his disabilities.

76. Defendants failed to initiate a full evaluation for Quentin until the middle of his second grade year, at the earliest.

77. After Quentin finally received a full evaluation, Defendants still refused to develop an IEP for Quentin, contrary to the recommendation of his treating physician.

78. Quentin was finally given an IEP in November of his third grade year, at his mother's specific request.

79. When Defendants finally implemented an IEP for Quentin, however, they ignored the requests of his parents and his treating physicians for specific accommodations, such as a small classroom setting or a one-one-one situation.

80. Defendant Halliburton and other HVES administrators and/or staff failed to consistently follow the procedures set forth in the IEP.

81. When Quentin's progress stalled after approximately four (4) months of steady progress under the IEP, Defendants failed to review and/or revise the IEP to address the changing situation.

82. The only modification made to Quentin's IEP in the midst of the escalating behavior and stalled progress was to provide accommodations for a standardized test whose scores would directly reflect on Defendant Halliburton, HVES, and the Board.

83. Instead of reviewing and/or revising Quentin's IEP with respect to his daily learning environment, Defendants resumed their prior pattern of disciplining and suspending Quentin.

84. Quentin was expelled from HVES on May 11, 2011.

85. By failing to provide appropriate accommodations for Quentin's disabilities, Defendants denied Plaintiff Quentin Link of the benefits of the free and appropriate public education he was entitled to under Section 504 of the Rehabilitation Act and applicable regulations.

86. By failing to properly evaluate Quentin's disabilities, and by failing to implement, follow, and revise an IEP in order to secure appropriate accommodations for Quentin's disability, Defendants directly violated the mandates of the regulations designed to ensure Plaintiff Quentin Link received the free and appropriate public education to which he was entitled to under Section 504 of the Rehabilitation Act.

87. Because Defendants deprived Quentin of the education to which he was entitled, Plaintiffs were compelled to enroll Quentin in a satisfactory private school, at great expense.

88. Further, Quentin was expelled and received multiple disciplinary actions as a direct result of Defendants' failure to provide Quentin with an appropriate education. All of these disciplinary actions remain on his school record.

89. Plaintiffs have suffered emotional injuries and other losses as a result of Defendants' wrongful and illegal conduct.

## COUNT III
## VIOLATIONS OF 42 U.S.C. § 12131, *et seq.* ("ADA")

90. Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 89 of this Complaint as if fully set forth herein.

91. Plaintiff Quentin Link has ADHD and difficulty processing auditory and visual cues, which disabilities substantially limit one or more major life activities. Accordingly, Quentin is an individual with a disability within the meaning of 42 U.S.C. §§ 12102 and 12131.

92. As a child between the ages of six (6) and seventeen (17) years of age residing within Davidson County, and specifically within the district zoned for HVES, Quentin met the essential eligibility requirements to receive an education provided by the Board. Accordingly, Quentin was a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12131.

93. By failing to provide appropriate accommodations for Quentin's disabilities, Defendants denied Quentin the benefits of a public education in violation of the ADA.

94. By repeatedly punishing, suspending, and ultimately expelling Quentin for conduct related to his disabilities, Defendants excluded Quentin from meaningful participation in a public education in violation of the ADA.

95. Because Defendants deprived Quentin of the education to which he was entitled, Plaintiffs were compelled to enroll Quentin in a satisfactory private school, at great expense.

96. Further, Quentin was expelled and received multiple disciplinary actions as a direct result of Defendants' failure to provide Quentin with an appropriate education. All of these disciplinary actions remain on his school record.

97. Plaintiffs have suffered emotional injuries and other losses as a result of Defendants' wrongful and illegal conduct.

## COUNT IV
## VIOLATIONS OF 42 U.S.C. § 2000d, *et seq.* ("Civil Rights Act")

98. Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 97 of this Complaint as if fully set forth herein.

99. Plaintiff Iris Link is an African American woman and the mother of Plaintiff Quentin Link.

100. Plaintiff Quentin Link is an African American child with ADHD.

101. The Board is a local education agency within the meaning of the Civil Rights Act.

102. Defendant HVES is an arm of the Board, and Defendant Halliburton is an agent and/or officer of the Board with policymaking authority.

103. Defendants discriminated against Plaintiffs and ultimately expelled Plaintiff Quentin Link on account of Plaintiffs' race in violation of the Civil Rights Act.

104. Plaintiff Quentin Link, an African American, is the only child to have been expelled from HVES since at least 2007.

105. On information and belief, Defendants disciplined Plaintiff Quentin Link more severely than other similarly situated students on account of Plaintiffs' race.

106. On information and belief, Plaintiff Quentin Link was disciplined more frequently and more severely, given fewer accommodations, and suspended more often than his white peers who struggle with ADHD.

107. The multiple suspensions, disciplinary write-ups, verbal confrontations, and other actions of Defendants, spanning Quentin's four years at HVES, created an abusive educational environment.

108. Defendant Halliburton and other administrators and/or staff at HVES knew of the racially disparate treatment and the abusive educational environment Quentin faced.

109. On information and belief, a significantly disparate proportion of African American students are and have been suspended and/or written up at HVES.

110. On information and belief, a significantly disparate proportion of African American students were suspended at Bellevue Middle School during the years that Defendant Halliburton was principal at that school prior to her becoming the principal at HVES.

111. Because of Defendants' illegal discrimination, Plaintiffs were compelled to enroll Quentin in a private school at great expense.

112. Quentin was also expelled and received multiple disciplinary actions as a direct result of Defendants' illegal discrimination. All of these disciplinary actions remain on his school record.

113. Plaintiffs have suffered emotional injuries and other losses as a result of Defendants' wrongful and illegal conduct.

## COUNT V
## EQUAL PROTECTION

114. Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 113 of this Complaint as if fully set forth herein.

115. Plaintiff Iris Link is an African American woman and the mother of Plaintiff Quentin Link.

116. Plaintiff Quentin Link is an African American child with ADHD.

117. Defendants unlawfully discriminated against Plaintiffs and ultimately expelled Plaintiff Quentin Link on account of Plaintiffs' race, in violation of the Equal Protection Clauses of the United States Constitution and the Constitution of the State of Tennessee.

118. Defendants' unlawful actions also denied Plaintiff Quentin Link his right to a free public education under Article 11, Section 12 of the Constitution of the State of Tennessee.

119. Quentin, an African American, is the only student to have been expelled from HVES since at least 2007.

120. On information and belief, Defendants disciplined Quentin more severely than white students on account of Plaintiffs' race.

121. On information and belief, Plaintiff Quentin Link was disciplined more frequently and more severely, given fewer accommodations, and suspended more often than his white peers who struggle with ADHD.

16

122. On information and belief, a significantly disparate proportion of African American students are and have been suspended and/or written up at HVES.

123. On information and belief, a significantly disparate proportion of African American students were suspended at Bellevue Middle School during the years that Defendant Halliburton was principal at that school prior to her becoming the principal at HVES.

124. On information and belief, Defendants intentionally treated Quentin differently than his white peers without any rational basis related to any legitimate state activity.

125. The multiple suspensions, disciplinary write-ups, verbal confrontations, and other actions of Defendants during Quentin's four years at HVES created an abusive educational environment.

126. Because of Defendants' unlawful discrimination, Plaintiffs were compelled to enroll Quentin in a private school at great expense.

127. Quentin was also expelled and received multiple disciplinary actions as a direct result of Defendants' illegal discrimination. All of these disciplinary actions remain on his school record.

128. Plaintiffs have suffered emotional injuries and other losses as a result of Defendants' wrongful and illegal conduct.

## MUNICIPAL AND SUPERVISORY LIABILITY

129. Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 128 of this Complaint as if fully set forth herein.

130. Defendants HVES and/or the Board are liable for the actions of Defendant Halliburton. Defendant Halliburton was a policymaker of HVES and/or the Board, with policymaking authority with respect to the scope of her responsibilities regarding HVES.

131. On information and belief, there was an established policy, practice, or custom at HVES of depriving students with ADHD and similar disabilities of the accommodations required to provide those students with a free and appropriate public education.

132. Additionally, on information and belief, Defendants Halliburton, HVES, and/or the Board established a pattern, practice, or custom of disciplining African American students more severely than white students.

133. This pattern, practice, and custom is evidenced by the significant disparity in the number of disciplinary write-ups, suspensions, and expulsions given to African American students at HVES and other schools where Defendant Halliburton has been principal, as compared to the number of similar disciplinary measures given to white students.

134. Defendant Halliburton knew or should have known of the foregoing policies, practices, and customs.

135. Defendant Halliburton tacitly approved of, knowingly acquiesced in, and/or knowingly implemented these unconstitutional and illegal policies, practices, and customs. On information and belief, Defendant Halliburton encouraged and/or approved these unconstitutional and illegal policies, practices, and customs.

136. Plaintiffs would not have sustained their injuries and losses, and their rights would not have been violated, but for the foregoing unconstitutional and illegal policies, practices, and customs.

**WHEREFORE**, premises considered, Plaintiffs respectfully demand the following:

1. That proper process issue and be served upon Defendants and that Defendants be required to appear and answer this Complaint within the time required by law;

2. That the Court issue an injunction requiring Defendants and all of their officers, agents, servants, and employees to expunge, erase, and remove each and every mention of any expulsion or suspension of Plaintiff Quentin Link from Defendants' records;

3. That Plaintiffs be awarded judgment against Defendants, jointly and severally, in an amount sufficient to compensate them for their injuries, losses, indignities, and emotional distress;

4. That Defendants be permanently enjoined from further such unlawful acts;

5. That Plaintiffs be awarded their attorney's fees;

6. That the costs of this action be awarded to Plaintiffs; and

7. That Plaintiffs be awarded such other and further relief as justice may require.

Respectfully Submitted,

WARDLE LAW, PLC

By: _____
Jonathan H. Wardle, No. 25741
8120 Sawyer Brown Road
Suite 101
Nashville, TN 37221
Tel.: (615) 941-7086
Fax: (615) 942-7087
*Counsel for Plaintiffs*