UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

QUENTIN LINK, a minor, by Next Friend )
and Legal Guardian, Iris Link, and by )
IRIS LINK, individually, )
 )
    Plaintiffs, )
 ) Case No. 3:12-cv-0472
 ) Judge Trauger
v. )
 )
METROPOLITAN GOVERNMENT OF )
NASHVILLE AND DAVIDSON COUNTY, )
and KIMBER HALIBURTON, individually and )
in her official capacity as principal of )
Harpeth Valley Elementary School, )
 )
    Defendants. )

## MEMORANDUM

Pending before the court is the Motion to Dismiss Defendant Kimber Haliburton (Docket No. 21), to which the plaintiff has responded (Docket No. 27), and the defendant has filed a reply (Docket No. 29).[1] For the reasons discussed herein, the defendant's motion will be granted.

## BACKGROUND

Quentin Link, an African American child diagnosed with attention deficit hyperactivity disorder ("ADHD"), was enrolled for approximately four years at Harpeth Valley Elementary

---

[1] After defendant Halliburton filed the present motion, the plaintiffs filed an Amended Complaint substituting the Metropolitan Government of Nashville and Davidson County as a defendant for previously named defendants Metropolitan Nashville Board of Public Education and Harpeth Valley Elementary School. (Docket No. 30.) Aside from this substitution, the Complaint and Amended Complaint are virtually indistinguishable. After the plaintiffs filed the Amended Complaint, neither party has argued that the pending motion to dismiss is moot. Therefore, the court will analyze the motion by referring to the factual allegations of the Amended Complaint.

1

School ("HVES"), which is operated by the defendant, Metropolitan Government of Nashville and Davidson County ("Metro").[2] While a student at HVES, Link alleges that defendant Kimber Haliburton, the school principal, and other school administrators,[3] failed to accommodate his ADHD and singled him out for disciplinary action, which included write-ups, suspensions, and ultimately expulsion from the school. This lawsuit arises from those events.

According to the Amended Complaint's allegations, school administrators knew that Link may have been struggling with ADHD from as early as the beginning of his kindergarten year and, at their suggestion, he was placed on medication. However, that course of treatment proved short-lived, as Link developed a severe physical reaction to the medication. The Amended Complaint alleges that, notwithstanding his ADHD, Link was singled out for disciplinary sanctions from the moment he began kindergarten at HVES. For instance, it alleges that he was either suspended or written-up at least twenty-four times during his kindergarten year alone. HVES allegedly continued to impose such sanctions during Link's first and second-grade years at the school.

In the majority of instances, Link was disciplined for conduct that school officials deemed "prejudicial to good order." Almost all of these incidents allegedly involved Link's engaging in distracted behavior attributable to his ADHD. The Amended Complaint alleges that such behavior included Link's turning the wrong way down the hallway or failing to focus on his school work. Typically, this behavior was met by a verbal confrontation from Link's teacher,

---

[2] Unless otherwise noted, the allegations are drawn from the plaintiff's Amended Complaint. (Docket No. 30.)

[3] Neither the Complaint nor the Amended Complaint identifies these other administrators by name.

2

which itself would trigger a reaction from Link, due, allegedly in large part, to his ADHD, and his corresponding difficulty in processing auditory and visual cues. Link would then be sent to defendant Halliburton's office, where he would experience another verbal confrontation and receive some form of disciplinary sanction.

The Amended Complaint alleges that Link's mother, Iris Link, worked with HVES officials to create an environment at school where her son could succeed. She attended numerous meetings and communicated extensively with HVES teachers and administrators concerning her son's behavior and alleged disability. She also raised the life circumstances that potentially impacted her son's mood or ability to concentrate. According to the Amended Complaint, school administrators ignored or discounted the effect such circumstances had on her son's behavior.

For a period of time, Ms. Link also unsuccessfully requested school officials to implement alternative educational programs with her son. For instance, contrary to the recommendation of Link's physician, Halliburton and other HVES administrators allegedly refused to provide Link with an individualized education program ("IEP") while he was in the second grade. Their refusal to provide an IEP continued into Link's third-grade year, as they, instead, decided to split Link's school day between two classrooms. Throughout this period, Link continued to experience the same disciplinary routine that typically culminated in a trip to Halliburton's office.

In response to a specific request by Ms. Link, the defendants agreed to implement an IEP for her son on approximately November 2, 2010. Nonetheless, Halliburton and other HVES administrators refused to authorize some accommodations specifically requested by Ms. Link, including one-on-one instruction or a smaller classroom setting. Despite these limitations, the

3

IEP allegedly yielded positive results. For instance, after the IEP was implemented, Link did not receive a write-up for approximately four months, which, according to the Amended Complaint, marked the longest consecutive period of time Link had gone without receiving such discipline while enrolled at HVES.

Despite Link's progress, the Amended Complaint alleges that HVES officials failed to follow the IEP. Indeed, following an incident on February 3, 2011, Link was taken to Halliburton's office instead of being sent to a resource teacher, as the IEP required. According to the Amended Complaint, Halliburton was dismissive and failed to provide a satisfactory explanation after Ms. Link inquired into why the IEP was not followed. Following this exchange, Ms. Link filed a complaint with the Metropolitan Nashville Board of Public Education ("the Board"), due to the school's failure to follow the IEP and Halliburton's attitude toward her.

Upon the filing of the complaint with the Board, Halliburton and other HVES personnel allegedly stopped investing time in the IEP and resumed their prior disciplinary routine. They also generally refused to make any alterations to the IEP. However, an exception was made when Halliburton requested that changes be made to the IEP to provide Link with one-on-one instruction while preparing for a standardized test known as the TCAP. According to the Amended Complaint, this request was made because the results of the examination reflected directly on Halliburton's performance as HVES principal.

Meanwhile, after the aforementioned incident on February 3, 2011, Halliburton repeatedly suspended Link from school and, on May 11, 2011, expelled him from HVES for an entire year. This expulsion was allegedly ordered in retaliation for Ms. Link's complaint to the Board. The Amended Complaint alleges that Link's expulsion was particularly vindictive in light

4

of the fact that: (1) it occurred just two weeks prior to the close of the school year; and (2) Halliburton and other HVES administrators knew at the time of the expulsion that Link had already been accepted to Currey Ingram Academy, a private school for children with learning differences, and planned on enrolling there the following fall. Halliburton and other school administrators were also allegedly aware that Link's expulsion from HVES would jeopardize his enrollment at Currey Ingram Academy. Nevertheless, upon review of the situation, administrators at Currey Ingram Academy determined that Link remained fit for enrollment at the school.[4] The Amended Complaint alleges that, since enrolling, Link has achieved remarkable success at the private school and has also received appropriate accommodations for his alleged disability. It further alleges that he now enjoys attending school, earns high marks, and has become a voracious reader.

According to the Amended Complaint, Link is the only child to have been expelled from HVES since at least 2007. Halliburton explained that Link was expelled because he engaged in the following violations of the school's code of conduct: (1) conduct prejudicial to good order; (2) repeat violations of the code; and (3) bullying. Link and his mother sought a Level One Appeal of Halliburton's expulsion decision. Upon review, the Level One Appeal Committee determined that there was nothing in Link's disciplinary record that supported Halliburton's finding that Link had engaged in bullying. Despite reversing Halliburton's bullying finding, the Level One Appeal Committee nonetheless upheld Link's expulsion, although they reduced its duration to six months.

---

[4] These administrators specifically determined that Link's expulsion was only attributable to his ADHD.

5

The Level One Appeal Committee also recommended that Link be placed in an "MIS" setting[5] if he returned to HVES upon the conclusion of his expulsion. According to the Amended Complaint, neither Halliburton nor any other HVES administrator previously raised the possibility of placing Link in an "MIS" setting. This failure to communicate is alleged to be consistent with the defendants' pattern of failing to consider or discuss alternative options to assist Link in light of his disability.

Link and his mother thereafter sought a Level Two Appeal. Upon review, the Level Two Appeal Committee upheld the decision of the first committee. In doing so, it suggested that Link would perform better at a school other than HVES when he returned to Metro Public Schools. Following this decision, Link and his mother sought a Level Three Appeal to the Board. However, this request for appeal was denied on July 13, 2011.

The instant action was commenced on May 11, 2012. (Docket No. 1.) The plaintiffs consist of the following two individuals: (1) Link, by his next friend and legal guardian, Iris Link; and (2) his mother, Iris Link. As defendants, the plaintiffs originally named (1) the Board, (2) HVES, and (3) Halliburton, individually, and in her official capacity as principal of HVES. (Docket No. 1.) On June 29, 2012, the Board and HVES filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6), arguing that they were not entities capable of being sued. (Docket No. 18.) In their response, the plaintiffs did not oppose dismissal of the Board and HVES, provided that it was without prejudice and they were granted leave to amend their Complaint to substitute Metro as a defendant in this action. (Docket No. 25.) On July 24, 2012, the court granted the motion of the Board and HVES, dismissed both entities without

---

[5] The record does not reflect what "MIS" means.

prejudice, and ordered the plaintiffs to file an Amended Complaint substituting Metro as a properly named defendant. (Docket No. 26.) The Amended Complaint was then filed on July 30, 2012.[6] (Docket No. 30.)

The plaintiffs allege that Halliburton and other HVES administrators maintained a policy and practice of failing to accommodate students with ADHD and related disorders. These school officials also allegedly maintained a policy and practice of failing to provide the resources for such students to receive an appropriate public education. Moreover, the plaintiffs allege that Halliburton and other HVES administrators singled Link out for discipline on account of his race. Specifically, they allege that Link was subjected to more severe disciplinary sanctions than other HVES students with ADHD. HVES is alleged to have a history of disciplining African American students more harshly than white students. In addition, the Amended Complaint alleges that Halliburton has a history of imposing such disparate disciplinary treatment that predates her tenure as HVES principal.

The plaintiffs assert claims under the Individuals with Disability Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*, 42 U.S.C. § 1983, and the Equal Protection Clause of the Fourteenth Amendment of the U.S. and Tennessee constitutions. The pending motion was filed by Halliburton on July 10, 2012.

---

[6] Again, aside from substituting Metro as a defendant, the allegations of the Amended Complaint are virtually indistinguishable from those appearing in the Complaint. Moreover, neither party argues that the filing of the Amended Complaint in any way moots the pending motion to dismiss. Therefore, the court will analyze the pending motion by referring to the factual allegations contained in the Amended Complaint.

7

## ANALYSIS

Halliburton has moved for dismissal of the plaintiffs' Complaint[7] on the ground that it fails to state claims upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

**I.      Standard of Review**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference

---

[7] As the court has previously explained, it will analyze Halliburton's motion to dismiss by referring to the allegations of the Amended Complaint. (*See supra* notes 1, 6.)

8

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

## II. The Defendant's Motion

### A. Standing

As an initial matter, Halliburton contends that Ms. Link lacks standing to assert numerous claims on her own behalf. Specifically, she argues that Ms. Link cannot assert claims under the Rehabilitation Act, the ADA, and Section 1983 for the deprivation of her child's civil and constitutional rights. (Docket No. 22, at 4-6.) In opposing Halliburton's motion, the plaintiffs concede that Ms. Link lacks standing to assert civil rights claims under Section 1983. (Docket No. 27, at 3-4.) The court will therefore dismiss Ms. Link's Title VI and federal equal protection claim against Halliburton.

The plaintiffs nonetheless argue that Ms. Link possesses standing to bring claims on her own behalf for the deprivation of her son's rights under the Rehabilitation Act and the ADA. (Docket No. 27, at 4.) However, in advancing this position, the plaintiffs have cited no controlling circuit authority addressing this precise issue. Moreover, the court's own research has failed to yield any such authority.

Instead, the plaintiffs cite a case from the Eastern District of New York concluding that the United States Supreme Court's decision in *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 535 (2007), which held that parents possessed standing to "prosecute IDEA claims on their own behalf," similarly extends to claims brought by parents on their own behalf under the Rehabilitation Act and the ADA. *A.M. ex rel. J.M. v. N.Y.C. Dep't of Educ.*, 840 F.Supp.2d 660, 675 (E.D.N.Y. 2012). In reaching this conclusion, the New York district court

9

recognized that federal courts have disagreed over whether *Winkelman's* holding could be extended in such a manner but nevertheless found that the majority of courts to address the issue, including the Ninth Circuit, determined that such an extension was warranted. *Id.* It was specifically compelled by those courts that relied upon *Winkelman's* recognition that parents possessed a legal interest in the education of their child. *Id.*

The court respectfully disagrees with the *A.M.* decision and those courts that hold that *Winkelman* may be read to confer standing on parents to bring claims on their own behalf under the Rehabilitation Act and the ADA. The Supreme Court's analysis in *Winkelman* was, as the *A.M.* decision acknowledged, rooted in the text and statutory structure of the IDEA. *Winkelman*, 550 U.S. at 523. ("We agree that the text of IDEA resolves the question presented. We recognize, in addition, that a proper interpretation of the Act requires a consideration of the entire statutory scheme."). Indeed, *Winkelman* found that this text and structure specifically granted parents independent and enforceable rights and also vested in them a central role in the statutory scheme. *Id.* at 530-31, 533. Moreover, while the Supreme Court recognized that parents possessed a legal interest in the education of their child, it did so in the context of analyzing the IDEA's statutory scheme. *Id.* at 529. Accordingly, the court refuses to extend the holding in *Winkelman* so as to confer independent standing on parents asserting claims under the Rehabilitation Act and the ADA. *See, e.g.*, *M.W. ex rel. Williams v. Avilla R-XIII Sch. Dist.*, No. 09-05098-CV-SW-JTM, 2011 WL 3354933, at *2 (W.D. Mo. Aug. 3, 2011) (declining to extend *Winkelman* to the Rehabilitation Act and ADA because its analysis was too closely rooted to the text and structure of the IDEA); *Hooker v. Dallas Indep. Sch. Dist.*, Civil Action No. 3:09-CV-0676-G-BH, 2010 WL 4025776, at *6 (N.D. Tex. Sept. 13, 2010) ("This court declines to so extend the *Winkelman* decision because it is too closely tied to the text and structure of the IDEA

10

to apply equally to the ADA and the Rehabilitation Act"), *adopted*, 2010 WL 4024896 (N.D. Tex. Oct. 13, 2010); *D.A. v. Pleasantville Sch. Dist.*, Civil No. 07-4341 (RBK/JS), 2009 WL 972605, at *8 (D.N.J. Apr. 6, 2009) (refusing to extend *Winkelman* to the ADA and Rehabilitation Act and noting that the Supreme Court's "holding arose from an examination of the overall structure and content of the IDEA"). Ms. Link's individual claims under both of these statutes against Halliburton will therefore be dismissed.

### B. Personal Capacity Claims

Halliburton also asserts that the plaintiffs cannot hold her personally liable under any of their theories of relief.[8] Specifically, she contends that the plaintiffs cannot bring personal capacity claims against her under the IDEA, the Rehabilitation Act, the ADA, and Title VI. (Docket No. 22, at 6-8.) She also asserts that Link has failed to state a claim against her individually under the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution. (*Id.* at 8-10.) Alternatively, Halliburton contends that she is entitled to qualified immunity. (*Id.* at 10-13.)

In their opposition brief, the plaintiffs concede that: (1) they cannot maintain claims for monetary damages against Halliburton in her personal capacity under the IDEA; and that (2) Link cannot maintain monetary claims under the Rehabilitation Act, the ADA, and Title VI. (Docket No. 27, at 6.) However, they assert that they may maintain their respective claims under those statutes for injunctive relief. (*Id.*) The plaintiffs also contend that Link has stated a claim under

---

[8] The court has thus far already concluded that Ms. Link lacks standing to assert claims under the Rehabilitation Act, the ADA, Title VI, and the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution. (*See supra* Section II. A.)

11

the Equal Protection Clause because he alleges that he was disciplined more severely than other students at HVES on account of his race. (Docket No. 27, at 8.)

### 1) Individual Liability Under the IDEA, Rehabilitation Act, ADA, and Title VI

The Sixth Circuit has previously held that plaintiffs may not bring actions against individual defendants in their personal capacities under the Rehabilitation Act, the ADA, and Title VI. *See Lee v. Mich. Parole Bd.*, 104 F'Appx. 490, 493 (6th Cir. 2004) ("Lee may not maintain an action under the ADA or the [Rehabilitation Act] against the individual defendants identified in his complaint because neither the ADA nor the RA impose liability upon individuals"); *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1356 (6th Cir. 1996) (noting that claim asserted under Title VI lies against an entity receiving federal financial assistance, not the individual defendants named in the action). Therefore, Link's individual capacity claims against Halliburton under the aforementioned statutes will be dismissed.

Moreover, the court fails to see any obvious need for holding Halliburton liable for injunctive relief in her personal capacity under the IDEA, in light of the fact that: (1) Halliburton is also named in her official capacity; and (2) Metro is a defendant in this action. In *Weyrick v. New Albany-Floyd Cnty. Consol. Sch. Corp.*, No. 4:03-CV-0095-DFH-WGH, 2004 WL 3059793, at *7 (S.D. Ind. Dec. 23, 2004), the court concluded that the plaintiff could not obtain injunctive relief against individual defendants in their individual capacities in an IDEA action. In reaching this conclusion, the court reasoned that:

> An injunction enforcing the IDEA against a school employee in her individual capacity would order her, in the words of the complaint, to 'comply with the requirements of the IDEA,' or in other contexts more specifically to provide particular educational services for a student. Such an order against an individual *in her*

12

> *individual capacity* would apply even if the defendant were to retire, be fired, or change careers, which would have no purpose.

*Id.* The court finds this reasoning persuasive. Accordingly, it will dismiss both plaintiffs' IDEA claims brought against Halliburton in her individual capacity.

### 2) Individual Liability Under the Equal Protection Clause

"The Equal Protection Clause of the Fourteenth Amendment prohibits a state from denying to any person within its jurisdiction the equal protection of the laws." *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 457 (6th Cir. 2008). It does not prohibit the use of classifications, but "'simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike.'" *Id.* (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). School officials commit an equal protection violation when they punish one student more severely for his conduct than other students on account of the student's race. *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 570-71 (6th Cir. 2011). "Direct or circumstantial evidence that a student's race motivated school officials' actions may establish an Equal Protection Clause violation." *Id.* at 571.

Having reviewed the allegations of the Amended Complaint in the light most favorable to the plaintiffs, the court finds that Link has failed to state a plausible claim for relief under the Equal Protection Clause. As the plaintiffs' note, the Amended Complaint alleges that Link was disciplined by Halliburton more frequently and severely than white students possessing ADHD at HVES on account of his race. It also alleges that Link received fewer accommodations for his ADHD than his white counterparts who had the same condition. Moreover, the Amended Complaint alleges that HVES and Halliburton had a prior history of disciplining African-American students more harshly than white students. Nonetheless, aside from the fact that they

13

too possessed ADHD, the Amended Complaint fails to provide any details concerning how the white beneficiaries of Halliburton's alleged disparate treatment were similarly situated to Link. For instance, there is no allegation that these students engaged in the same types of conduct as Link, but evaded or received less harsh discipline. Likewise, there are no details concerning whether white students at HVES possessing ADHD even made requests for the same types of accommodations as Link. In sum, the Amended Complaint fails to allege that Link was treated differently from persons who, in all relevant respects, were alike. Accordingly, the court will dismiss Link's federal equal protection claim against Halliburton in her individual capacity.[9]

### 3) Qualified Immunity

Because no federal individual capacity claims remain against Halliburton, there is no need for the court to address whether she is entitled to the defense of qualified immunity.

## C. Official Capacity Claims

Finally, Halliburton also moves for dismissal of all official capacity claims asserted against her by the plaintiffs.[10] (Docket No. 22, at 13-14.) She cites the Supreme Court's decision in *Will v. Mich. Dep't Of State Police*, 491 U.S. 58, 71 (1989) for the proposition that a suit against a state employee in her official capacity is no different that a suit against her employer. (*Id.* at 13.) Therefore, because her employer, Metro, is already a named defendant in

---

[9] Halliburton also argues that dismissal of both plaintiffs' equal protection claims brought under the Tennessee Constitution is warranted. (Docket No. 22, at 8.) Given its analysis above, the court agrees.

[10] Again, the court has already held that Ms. Link lacks standing to assert claims under the Rehabilitation Act, the ADA, Title VI, and the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution. (*See supra* Section II. A.)

14

this action, Halliburton contends that the official capacity suit against her is redundant and should be dismissed. (*Id.* at 13-14.)

The court finds this argument well taken. As Halliburton asserts, her employer, Metro, is already a defendant in this action. Moreover, the claims brought by the plaintiffs against both of these defendants mirror one another, making them redundant. Accordingly, the court will dismiss all of the plaintiffs' official capacity claims asserted against Halliburton. *See Jackson v. Shelby Cnty. Gov't*, No. 07-6356, 2008 WL 4915434, at *1 (6th Cir. Nov. 10, 2008) (affirming district court's grant of summary judgment to defendants on claims brought against a sheriff in his official capacity "because those claims mirror[ed] the claims against the County, and [we]re therefore redundant;" *see also Scott v. Tipton Cnty.*, No. 10-2616, 2011 WL 2515976, at *3-4 (W.D. Tenn. June 22, 2011) (noting that "the general practice of district courts in this circuit" is to "dismiss official capacity claims where the local governmental entity is already a party," collecting cases, and dismissing the plaintiff's official capacity claims as redundant) (internal quotation marks and citations omitted).

## CONCLUSION

For all of the reasons discussed herein, the Motion to Dismiss Defendant Kimber Haliburton (Docket No. 21) will be **GRANTED**.

An appropriate order will enter.

 _____
 ALETA A. TRAUGER
 United States District Judge